38027, 38092. GRAY v. DIXON et al.; and vice versa.

GREGORY, Justice.

This case arises from a dispute between the Chairman of the Board of Commissioners of Roads and Revenues in Ware County (chairman) and the remaining four members of the Board of Commissioners (commissioners). On July 31, 1981 the Board filed notice of its intention to present at the next County Commissioners' meeting an amendment to Georgia Laws, 1963, pp. 2237, et seq.[1] pursuant to the authority of the County Home Rule Art. IX, Sec. II, Par. I, Ga. Const.; Georgia Laws 1976, 1306 et seq.; Code Ann. § 2-5901. The amendment proposed to delete §§ 11 and 13 from Georgia Laws, 1963, pp. 2237, 2241. Section 11 states that "The chairman [of the Board of Commissioners] shall be the chief executive officer of the county government, and shall generally

---

[1] This Act of the legislature created the Ware County Board of Commissioners and defined certain duties of the Board and of the Chairman of the Board.

supervise, direct and control the administration of the affairs of the county . . ." Section 13 outlines particular duties delegated to the chairman. The effect of the proposed amendments was to retain the chairman's duties of presiding over commission meetings and signing employee payroll checks, but to eliminate his position as "chief executive officer of the county government." The proposed ordinance also stated that the chairman would not be provided "office space, use of a county vehicle, use of a county credit card or travel expenses except upon the approval of the Board."

Simultaneously, the commissioners proposed to create the office of county manager, pursuant to the authority granted the Board under Georgia Laws, 1974, pp. 435-436. The proposed ordinance stated that "the county manager shall be the chief executive officer of Ware County and the administrative head of the county government." The proposal enumerated certain administrative duties to be delegated to the county manager, and made the office of county manager directly accountable to the Board of Commissioners.

The chairman filed suit against the commissioners in Ware Superior Court, praying that the proposed amendment and ordinance be declared unconstitutional if enacted, and seeking an injunction against their enactment. The complaint also prayed that Georgia Laws 1974, pp. 435-6 be declared unconstitutional. The trial court granted the chairman's application for a temporary restraining order. At the hearing on the chairman's application for an interlocutory injunction, the parties stipulated that there were no issues of fact to be determined and that the sole issues before the court were questions of law. Following the hearing but before the trial court handed down a written order, the commissioners answered the chairman's complaint, and in a counterclaim announced their intention to propose a different amendment to Georgia Laws 1963, pp. 2237, et seq. and a different ordinance pursuant to the authority of Georgia Laws, 1974, pp. 435-6.

Insofar as this litigation is concerned, the crucial portion of the second proposed amendment to Georgia Laws 1963, pp. 2237 et seq., is as follows:

"Personnel subject to the jurisdiction of the county governing authority shall be hired, supervised, and discharged by such persons and under such conditions as the board of commissioners of roads and revenues may from time to time provide; and, except as may be specifically authorized by the board of commissioners of roads and revenues, the chairman shall not by virtue of his office have authority to hire, supervise, or discharge such personnel." The language of Section 11, Georgia Laws 1963, pp. 2241-42 stating that the "chairman shall be the chief executive officer of the county

government" was not altered by the second proposed amendment. The parties agree that the only significant change made in the second proposed ordinance creating the office of county manager as compared to the first proposed ordinance is the deletion of the language stating that "the county manager shall be the chief executive officer of Ware County and the administrative head of county government."

The trial court entered an order finding that the first proposed amendment and ordinance were unconstitutional if enacted; that Georgia Laws 1974, pp. 435-6 is constitutional; that the second proposed amendment is authorized by Art. IX, Sec. II, Par. I of the Georgia Const. (Code Ann. § 2-5901); and that the second proposed ordinance, creating the office of county manager, is authorized by Georgia Laws 1974, pp. 435-6. The trial court then enjoined the commissioners from proceeding with their plans to present the first proposed amendment and ordinance at the county commissioner's meeting.

In case no. 38027 the chairman appeals the trial court's findings that Georgia Laws 1974, pp. 435-6 is constitutional and that the second proposed amendment and ordinance are valid, if enacted. In case no. 38092 the commissioners appeal the trial court's determination that the first proposed amendment and ordinance are unconstitutional if enacted.

(1) (a) Case No. 38027. The chairman first argues that the proposed ordinance creating the office of county manager violates the County Home Rule, Art. IX, Sec. II, Par. I of the Ga. Const.; Georgia Laws 1976, pp. 1306 et seq.; Code Ann. § 2-5901. The chairman maintains that Code Ann. § 2-5901 (c) (1) and (2) specifically prohibit the majority of the county commissioners from "stripping the chairman of his authority," creating the office of county manager and conferring the chairman's authority on this office.

Code Ann. § 2-5901 (a) provides that "[t]he governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions or regulations relating to its property, affairs and local government for which no provision has been made by general law and which is not inconsistent with this Constitution, or any local law applicable thereto." Code Ann. § 2-5901 (b) sets forth the procedures by which a county "as an incident of its home rule power [may] . . . amend or repeal the local acts applicable to its governing authority." Code Ann. § 2-5901 (c) states in part: "[t]he power granted to counties in Subparagraphs (a) and (b) above shall not be construed to extend to the following matters or any other matters which the General Assembly by general law has

preempted or may hereafter preempt, but such matters shall be the subject of general law, or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under this Constitution: (1) Action affecting any elective county office, the salaries thereof, or the personnel thereof, except personnel subject to the jurisdiction of the governing authority;[2] (2) action affecting the composition, form, procedure for election or appointment, compensation and expenses and allowances in the nature of compensation, of the county governing authority."

The thrust of the chairman's argument is that the proposed ordinance would permit a majority of the Board of County Commissioners to divest him of administrative powers given to him by a local act of the General Assembly[3] and confer these powers on the newly created office of county manager. Because, he argues, these actions "affect... [an] elective office" and "affect... the composition [and] form... of the county governing authority," the County Home Rule Amendment to the Constitution prohibits the Board of Commissioners from acting in this manner. Rather, the chairman maintains that under the County Home Rule Amendment only the General Assembly is authorized to take action affecting an elective office and action affecting the composition and form of the county governing authority. The chairman concedes that pursuant to Georgia Laws 1974, pp. 435-6 the General Assembly authorized the board of commissioners of any county having a population of less than 400,000 to create the office of county manager, but argues that this Act conflicts irreconcilably with the reservation of this specific power in the General Assembly under the County Home Rule Amendment. Thus, he maintains, Georgia Laws 1974, pp. 435-6 is unconstitutional.

The pertinent part of Georgia Laws 1974, pp. 435-6 provides:

"The board of commissioners of any county of the State or the General Assembly may create in and for those counties in which it deems necessary or advisable the office of county manager and vest in such office powers, duties and responsibilities of an administrative nature. The qualifications, method of selection, appointment, compensation, tenure and such other related matters pertaining to the office of county manager shall be provided for by the board of commissioners of any county of the State. Nothing in this Act shall

---

[2] The words "personnel subject to the jurisdiction of" have been omitted from the codification of Georgia Laws 1976, pp. 1306, 1309.

[3] Specifically, Georgia Laws 1963, pp. 2237 et seq.

pertain to consolidated governments which include all the area within any county."

As noted above, Section (c) of the County Home Rule Amendment, Code Ann. § 2-5901, states that the legislative power granted to counties shall not be construed to extend to eight enumerated matters, e.g., action affecting the form of county government, "but such matters shall be the subject of *general law,* or the subject of *local acts* of the General Assembly." (Emphasis supplied.) We agree with the chairman that Georgia Laws 1974, pp. 435-6 is a general law authorizing certain counties to take action "affecting the ... form ... of the county governing authority," and, in this case, "action affecting [an] elective county office ..." However, the General Assembly has the power to enact a law authorizing a county governing authority to create the office of county manager; contrary to the Chairman's position, the General Assembly's power to enact such a law is not dependent on, nor is it circumscribed by, the County Home Rule Amendment. And while it is true that the County Home Rule Amendment does not authorize a county government to enact legislation affecting an elective office or affecting the form of county government, the General Assembly may enact legislation which delegates the power to certain counties, apart from the County Home Rule Amendment, to take action in these matters. The County Home Rule Amendment does not limit the power of the General Assembly to delegate this authority to the counties. In enacting Georgia Laws 1974, pp. 435-6 the General Assembly has simply agreed to share with certain county governments a limited portion of its power to change the form of county government. We do not agree with the chairman that this Act of the legislature conflicts ir-reconcilably with the County Home Rule Amendment. Thus the argument that Georgia Laws 1974, pp. 435-6 is unconstitutional is without merit. We also hold that the trial court did not err in finding that the second proposed ordinance creating the office of county manager is authorized by Georgia Laws 1974, pp. 435-6.

(b) Further, we agree with the trial court that the second proposed amendment, quoted supra, to Georgia Laws 1963, pp. 2237 et seq. is authorized by the County Home Rule Amendment as it concerns the hiring and firing of "personnel subject to the jurisdiction of the county governing authority" and clearly falls within the ambit of the exception to Code Ann. § 2-5901 (c); Georgia Laws 1976, pp. 1306, 1309; *Guhl v. Williams,* 237 Ga. 586, 588 (229 SE2d 382) (1976).

(2) Case No. 38092. The commissioners argue, however, that the trial court erred in ruling that the first proposed amendment and ordinance were unconstitutional if enacted and enjoining them from

presenting these proposals at the County Commissioner's meeting. As stated above, the crucial distinction in the first and second proposed amendments to Georgia Laws 1963, pp. 2237 et seq. is that the first proposed amendment removed the chairman from the position of "chief executive officer of the county." The trial court correctly concluded that this would be action affecting an elective office and changing the form of county government which, under the County Home Rule Amendment, a county is not permitted to take. Code Ann. § 2-5901 (c) (1) and (2). Likewise, the only difference in the two ordinances proposing the creation of the office of county manager is that the first purported to make the county manager the "chief executive officer" of the county. However, Georgia Laws 1974, pp. 435-6 limits a county board of commissioners to conferring "powers, duties and responsibilities of an *administrative* nature" on the office of county manager. (Emphasis supplied.) Thus, any attempt by the commissioners in this case to confer "executive powers" on the office of county manager would be an "action affecting the ... form ... of the county governing authority" in violation of Code Ann. § 2-5901 (c) (2).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 10, 1982.

*Leon A. Wilson II,* for appellant.
*Gibson, McGee & Jackson, J. Baker McGee, Jr.,* for appellees.